UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WILLIE CONNER,

    Plaintiff,

    v.      CAUSE NO. 3:22-CV-761-JD-JEM

CREASY, et al.,

    Defendants.

OPINION AND ORDER

Willie Conner, a prisoner without a lawyer, filed an amended complaint. ECF 25. As required by 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). Because Conner is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Conner alleges Captain John Creasy searched his cell at the Westville Correctional Facility on July 29, 2022, to look for contraband as a way to get him

removed from the facility. Captain Creasy found a "piece of paper which he claimed had a[n] unknown substance on it and a pen he claimed, 'smelled of smoke.'" ECF 25 at 3. Conner told Captain Creasy the items weren't his and belonged instead to his cellmate Cain. However, Captain Creasy still wrote Conner a conduct report for possession of a controlled substance. That same day, Intelligence Officer Sharon Hert tested the items with a mobile device and found them to be negative for "intoxicants." *Id*. She concluded, "The ink pen tube had tobacco stains and a strong tobacco odor," although no specific test was performed for tobacco. *Id*. On August 5, 2022, the conduct report was screened by Disciplinary Screening Officer Anissa Porter. Creasy pled not guilty and checked the box indicating he wished to have at least 24 hours to prepare for the hearing.

Less than an hour after the screening report was issued, Disciplinary Hearing Officer Jacqueline Salyer conducted the hearing. Conner protested due to the short timeframe. During the hearing, Conner presented Inmate Cain's written statement that the contraband belonged to him. DHO Salyer "ignored this admission" and found Conner guilty. *Id*. at 4. Conner appealed, but Deputy Warden Kenneth Watts denied the appeal finding, "no procedural or due process errors are noted." *Id*.

Conner has sued Captain Creasy for "vindictively" searching his cell, Investigations Intelligence Officer Hert for coming to an "unfounded conclusion" about the tobacco residue, Disciplinary Screening Officer Porter for "allow[ing]" her coworker to hold the hearing less than 24 hours after the screening report was issued, Disciplinary Hearing Officer Salyer for holding the hearing prematurely and

2

"ignore[ing] the written confession of Inmate Cain" when she found him guilty, and Deputy Warden Watts for denying his appeal. *Id*. at 4–5. He seeks monetary damages and to have his "conduct (DHB) record expunged." *Id*. at 6.

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. However, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The atypical and significant hardship standard is a high one. *See e.g., Hoskins v. Lenear*, 395 F.3d 372, 374–75 (7th Cir. 2005) (prisoner not entitled to process for discipline of two months in segregation, the loss of prison job, the loss of privileges, and a transfer); *Lekas v. Briley*, 405 F.3d 602, 610–14 (7th Cir. 2005) (even ninety-day placement in disciplinary segregation where inmate was "prohibited from participating in general population activities," deprived of contact with other inmates, and barred from "educational and work programs" did not trigger due process concerns); *White v. Scott*, 849 F. App'x 606, 608 (7th Cir. 2021) (inmates have no liberty interesting in avoiding restrictions "that do not substantially worsen the conditions of confinement."); *Fiorentino v. Biershbach*, 64 Fed. Appx. 550, 552 (7th Cir. 2003) (dismissal affirmed because plaintiff's allegations that he was "deprived of various rights and privileges enjoyed by the general prison population such as smoking, watching TV, listening to the radio, using the telephone, accessing the law library, and participating in recreational and religious programs" did not constitute a protected liberty interest).

Here, Conner takes issue with various aspects of his disciplinary process—from the initiating search of his cell to the denial of his appeal. However, he doesn't allege he was ultimately deprived of any sort of protected liberty interest. In fact, the report of disciplinary hearing attached to his complaint indicates he only received a written reprimand which stated, "Do not poss. tobacco." ECF 25-1 at 8;[1] *see also id*. at 8 (letter from Deputy Warden re: Disciplinary Hearing Appeal stating, "Since there was no grievous loss involved, this is your final level of appeal."). Therefore, to the extent Conner asserts his Fourteenth Amendment due process rights were violated when he was improperly found guilty of possessing tobacco using a faulty disciplinary process, he has not stated any viable claims.

Conner also alleges Captain Creasy violated his rights by searching his cell. The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, determining whether a search is violative of the Fourth Amendment is a question of reasonableness and "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). With regard to prisons in particular, however, the Supreme Court established a "limited categorical rule" that the Fourth Amendment's prohibition of unreasonable searches doesn't apply to those conducted "'within the confines of the prison cell.'" *Henry v. Hulett*, 969 F.3d 769, 777 (7th Cir. 2020) (quoting

---

[1] A more legible copy of the report is attached to an earlier version of his complaint. *See* ECF 10-1 at 5.

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984)).[2] This is because the "right to privacy in possessions and living quarters" while incarcerated is "'fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.'" *Id*. at 778 (quoting *Hudson*, 468 U.S. at 527–28). These principles apply equally to both pretrial detainees and convicted prisoners. *Id*. at 779. In this case, Conner hasn't stated a viable Fourth Amendment claim regarding the search of his cell. On the face of the complaint, the search was limited to his cell rather than his person. Therefore, it didn't violate the Constitution under the limited categorical rule set forth in *Hudson*, and he isn't entitled to any relief under the Fourth Amendment.

Nor has he stated an Eighth Amendment claim. It's true that the "Fourth and Eighth Amendments have different roles to play with respect to *bodily* searches and protect different categories of constitutional rights." *Henry*, 969 F.3d at 781 (emphasis added). "The Eighth Amendment safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Id*. Specifically, "[t]he Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). Nothing in Conner's complaint suggests the

---

[2] An exception to that limited categorical rule has been recognized wherein "the Fourth Amendment protects (in a severely limited way) an inmate's right to *bodily privacy* during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry*, 969 F.3d at 779 (emphasis added). Conner doesn't allege he was subjected to a strip search, so that exception doesn't apply here.

5

search of his cell was "sufficiently serious" to rise to the level of a constitutional violation that resulted in the "denial of the minimal civilized measure of life's necessities." *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Therefore, he hasn't stated a claim under the Eight Amendment either.[3]

This complaint does not state any claims for which relief can be granted. However, if Conner believes he can state a claim based on (and consistent with) the events described in this complaint, he may file a second amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the words "Second Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

As a final matter, Conner filed a motion for summary judgment. However, because Conner's amended complaint doesn't state any claims, this motion is premature and summary judgment cannot be granted in his favor.

---

[3] Conner vaguely alleges Captain Creasy searched his cell "vindictively" as a "way to get Plaintiff removed from his facility" because he was having unspecified "issues" with unnamed staff members and had filed numerous grievances. ECF 25 at 3. These sparse allegations don't state a plausible claim of retaliation under the First Amendment. *See e.g., Szymankiewicz v. Doying*, 187 Fed. Appx. 618, 622 (7th Cir. 2006) (noting that neither the "mere fact" that a prisoner was disciplined nor "unsupported speculation and conjecture about the defendants' motives" demonstrates First Amendment retaliation); *see also Swanson v. Citibank*, N.A., 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

For these reasons, the court:

(1) DENIES the motion for summary judgment (ECF 28);

(2) GRANTS Willie Conner until **May 10, 2024**, to file a second amended complaint; and

(3) CAUTIONS Willie Conner if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state any claims for which relief can be granted.

SO ORDERED on April 10, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT